IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Aaron Asher, et al.,

      Plaintiffs,

      v.                Case No. 2:15-cv-1097

Battelle Memorial Institute,
et al.,

      Defendants.


OPINION AND ORDER

    This is an action filed pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Donny Asher was employed by defendant Battelle Memorial Institute ("Battelle"), and was a participant in the Group Accident Insurance for Staff Members of Battelle Memorial Institute ("the "Plan"). Plan benefits were provided pursuant to the Voluntary Accident Insurance Program ("the Policy") issued to Battelle by defendant Federal Insurance Company. Plaintiffs Aaron Asher and Michael Asher are two of Donny Asher's designated beneficiaries, the third being Judreta A. Beardsley. After Donny Asher was killed on August 25, 2011, while piloting his private plane, the beneficiaries applied for benefits under the Plan. Federal denied the claims based upon its interpretation and application of the "Aircraft Pilot or Crew" exclusion in the Policy. Aaron and Michael Asher filed their complaint in the Franklin County, Ohio, Court of Common Pleas, asserting a claim for benefits under 29 U.S.C. §1132(a)(1)(B) (Claim One) and a claim for breach of fiduciary duty under 29 U.S.C. §1132(a)(3)(B). Defendants removed the action to this court. This case is now before the court for a ruling on the

pending motions.

I. Status of Judreta Beardsley

On July 26, 2013, Judreta Beardsley contacted Federal about initiating a claim under the Policy.  By letter dated August 5, 2013, Federal denied her claim based upon the "Aircraft Pilot or Crew" exclusion.  Beardsley did not file an administrative appeal from the denial of her claim.  Beardsley was not named as a plaintiff in the complaint filed by the Ashers on February 27, 2015. On May 3, 2016, Beardsley, acting pro se, filed a motion for judgment on the administrative record and motion for summary judgment (Doc. 23), in which she characterized herself as a plaintiff.  On June 29, she filed a supplement (Doc. 26) to her earlier motion.

In their May 27, 2016, and July 25, 2016, responses to Beardsley's filings, defendants stated that they would not oppose permitting Beardsley to intervene as a plaintiff in this case pursuant to Fed. R. Civ. P. 24 so long as the court would not reopen the briefing on the pending cross-motions for judgment. Defendants stated that although Beardsley did not exhaust her administrative remedies, the Ashers did exhaust their remedies and the court has a complete administrative record before it. Defendants noted that "it would appear to make little sense to preclude Beardsley from becoming a plaintiff who would also be bound by this Court's judgment, to the extent that is what she is seeking by her Motion."  Doc. 24, p. 4; Doc. 27, p. p. 5.  The Asher plaintiffs have filed no response to Beardsley's motions or to defendants' responses to those motions.  Beardsley has filed no further pleadings.

2

The court will construe Beardsley's motions as including a request for leave to intervene in this case as a party plaintiff, and will grant the request for intervention.

## II. Administrative Record

The record reveals that Donny Asher, a participant in the Plan, was killed on August 25, 2011, while piloting his private airplane. On July 26, 2013, Judreta Beardsley spoke with someone at the Claim Service Center of the Chubb Group of Insurance Companies ("Chubb"), which processes claims under the Policy issued by Federal, a member of the Chubb Group. Beardsley stated that she wanted to file a claim under the Policy as Asher's beneficiary. AR 151. By letter dated August 5, 2013, Chubb notified Beardsley of its decision that her claim was denied due to lack of coverage under the Policy. AR 185. Chubb referred to the Policy, Section VI, General Exclusions, which sets forth exclusions which "apply to all benefits or Hazards under this policy." AR 186. Chubb quoted from the "Aircraft Pilot or Crew" exclusion, which provides in part as follows:

> Aircraft Pilot or Crew
>
> This insurance does not apply to any Accident, Accidental Bodily Injury or Loss caused by or resulting from, directly or indirectly, a Primary Insured Person riding as a passenger in, entering, or exiting any aircraft while acting or training as a pilot or crew member.

AR 186. The letter noted that to recover benefits under the policy, it must be demonstrated that an accident resulted in accidental bodily injury or death, and that benefits are not otherwise excluded under the Policy. The letter further advised that Asher was the licensed pilot of the aircraft which crashed, resulting in his death, and that the aircraft was not owned, leased

3

or operated by Battelle, the policyholder.  Chubb concluded that the "Aircraft Pilot or Crew" exclusion applied, and that the requisite burden of proof for payment of benefits under the policy had not been provided.  AR 187.  No appeal from this denial of benefits was pursued.

By letter dated June 16, 2014, counsel representing Michael and Aaron Asher notified Chubb that he was filing a claim for benefits under the Policy on their behalf.  AR 221.  By letter dated October 8, 2014, Chubb notified counsel that no coverage was provided under the Policy for the death of Donny Asher.  The letter quoted the "Aircraft Pilot or Crew" exclusion, and concluded that since Asher was the pilot of the aircraft, the exclusion would apply.  AR 270-272.  By letter dated November 8, 2014, counsel notified Chubb of his intent to appeal the decision denying benefits.  AR 279-280.  An appeal letter dated November 18, 2014, was later sent to Chubb.  AR 298-304.  By letter dated December 9, 2014, counsel was notified that the appeal had been sent to the appeal committee for review.  AR 325.

By letter dated February 10, 2015, counsel for the Ashers was notified of the decision of Federal's ERISA Review Committee ("the Committee") affirming the decision to deny benefits.  AR 352-355.  The letter noted that it was undisputed that Donny Asher was involved in a crash with an aircraft that he owned and operated as the pilot.  AR 352.  The letter quoted the "Aircraft Pilot or Crew" exclusion.  AR 353-354.  The Review Committee concluded that the "Aircraft Pilot or Crew" exclusion was "directly on point" and that the exception to the exclusion for aircraft owned, leased or operated by Battelle did not apply because the aircraft was owned

4

by Asher and was not being operated on behalf of Battelle.  AR 354.

On appeal, counsel argued that the words "while acting or training as a pilot or crew member" should be read as modifying only the words immediately before that phrase, namely, "or exiting."  Thus, counsel contended that the exclusion only applied when death occurred as an insured person, while acting or training as a pilot, was exiting the aircraft, not when he was performing any other actions such as flying the plane.  The Review Committee rejected this interpretation of the exclusion:

> This is not a reasonable interpretation of the language. The words "any aircraft" and "while acting or training as a pilot or crew member" are the qualifiers for three criteria: riding as a passenger in, entering or exiting. Your interpretation that such qualifiers apply only to the third criteria of "exiting" would leave the other criteria without proper qualification.  Further, your interpretation ignores the other paragraphs in the Aircraft Pilot or Crew exclusion, and the language must be considered as a whole.

AR 354.  The Committee concluded that "there is no intent to cover any loss when the loss (1) involves an aircraft that is not owned, leased or operated on behalf of the Battelle Memorial Institute, and (2) involves an insured that is acting or training as a pilot or crew member."  AR 354.  The Committee stated that because Asher "was piloting his own aircraft at the time of his death, there is no coverage under the policy for Mr. Asher's death."  AR 354.

III. Denial of Benefits Claim

A. Standard of Review

A. Applicability of Arbitrary and Capricious Standard of Review

A plan administrator's denial of benefits is reviewed de novo unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to

construe the terms of the plan. <u>Morrison v. Marsh & McLennan Companies, Inc.</u>, 439 F.3d 295, 300 (6th Cir. 2006). Where an ERISA plan gives the plan administrator such discretionary authority, the administrator's decision is reviewed under the arbitrary and capricious standard. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 111 (1989).

The Policy in this case defines "Proof of Loss" as meaning "written evidence acceptable to Us that an Accident, Accidental Bodily Injury or Loss has occurred." AR 41. "Us" is defined as "FEDERAL INSURANCE COMPANY." AR 44. The Sixth Circuit has held that the requirement to provide "satisfactory proof" or similar phrases is sufficiently clear to grant discretion to administrators and fiduciaries. <u>See</u> <u>Frazier v. Life Insurance Co. of North America</u>, 725 F.3d 560, 567 (6th Cir. 2013); <u>see also</u> <u>Deel v. United of Omaha Life Ins. Co.</u>, No. 11-12751, 2012 WL 928349 at *8 (E.D. Mich. Feb. 27, 2012)(discretion granted to administrator where policy required "acceptable proof of loss")(<u>adopted by</u> 2012 WL 917569 (E.D. Mich. Mar. 19, 2012)). The similar language in the policy in this case is sufficient to confer discretionary authority on Federal, and the arbitrary and capricious standard of review applies. The court notes that it would arrive at the same result in this case under <u>de novo</u> review.

B. Federal's Decision

Review under the arbitrary and capricious standard is "extremely deferential." <u>McClain v. Eaton Corp. Disability Plan</u>, 740 F.3d 1059, 1064 (6th Cir. 2014). "Review under the arbitrary and capricious standard is the least demanding form of judicial review of an administrative action; it requires only an explanation

6

based on substantial evidence that results from a deliberate and principled reasoning process." Morrison, 439 F.3d at 300; see also Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003)("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."); Williams v. International Paper Co., 227 F.3d 706, 712 (6th Cir. 2000)(if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious). This is true regardless of whether an equally rational interpretation is offered by the plan participant. Gismondi v. United Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005). "The arbitrary and capricious standard requires courts to review the plan provisions and the record evidence and determine if the administrator's decision was 'rational.'" Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010). In reviewing the administrator's decision, the court's review is limited to the administrative record which was before the plan administrator at the time of the benefit determination. Schwalm, 626 F.3d at 308.[1]

The Policy covers 24-hour business and pleasure hazards, defined as "all circumstances, subject to the terms and conditions of the policy, to which an Insured Person may be exposed." AR 13. The Policy also includes exclusions to address situations which are

---

[1] In contrast, when applying a de novo standard in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator made a correct decision with no deference or presumption of correctness afforded to the administrator's decision. Hoover v. Provident Life & Acc. Ins. Co., 290 F.3d 801, 808-09 (6th Cir. 2002).

beyond the scope of risk contemplated under the Policy. One such exclusion is the one at issue here, which provides as follows:

Aircraft Pilot or Crew

This insurance does not apply to any Accident, Accidental Bodily Injury or Loss caused by or resulting from, directly or indirectly, a Primary Insured Person riding as a passenger in, entering, or exiting any aircraft while acting or training as a pilot or crew member.

This exclusion shall not apply:

1) to a Primary Insured Person riding as a passenger in, entering, or exiting the Policyholder's Owned Aircraft, Leased Aircraft or Operated Aircraft while such Primary Insured Person is acting or training as a pilot or crew member by or on behalf of the Policyholder, but only if such Primary Insured Person is certified and licensed by a governmental authority with competent jurisdiction to operate or serve as crew on such Owned Aircraft, Leased Aircraft or Operated Aircraft.

2) to any passengers who temporarily perform pilot or crew functions in a life threatening emergency.

AR 27. This exclusion recognizes that acting as "Aircraft Pilot or Crew" entails a degree of risk significantly greater than that involved in most business and pleasure activities. This exclusion is reasonably read as excluding from coverage an insured who is piloting an airplane, the exception being where the insured is a certified pilot flying a plane owned, leased, or operated by Battelle.

This exclusion correlates with another exclusion entitled "Owned Aircraft, Leased Aircraft, or Operated Aircraft." This provision excludes liability for injury or loss to an insured person "being in, entering, or exiting any aircraft: 1) owned, leased or operated by [Battelle] or on [Battelle's] behalf, or 2) operated by an employee of [Battelle] on [Battelle's] behalf"

8

unless the aircraft is listed on the Policy and is "piloted by a certified pilot licensed to operate such aircraft." AR 26-27. Read together, these exclusions show an intent to cover accidents involving any insured, including pilots and crew, traveling in a listed aircraft owned, leased or operated by Battelle which is piloted by a certified pilot. It makes sense that Battelle would want to cover its employees who are engaged in business activities on behalf of Battelle while using Battelle aircraft. Similarly, the "Aircraft Pilot or Crew" exclusion operates to exclude from coverage accidents involving an insured who is "acting or training as a pilot or crew member" while "a passenger in, entering, or exiting any aircraft" unless the aircraft is owned by Battelle and the insured is a certified pilot. This exclusion indicates that the policy was not designed to provide flight insurance for employees piloting their own planes.

Plaintiffs argue that the phrase "while acting or training as a pilot or crew member" applies only to the immediately preceding phrase in the series, "exiting any aircraft." Plaintiffs rely on the last antecedent rule, "a principle of contract interpretation which provides that 'a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" Tate v. General Motors LLC, 538 F. App'x 599, 602 (6th Cir. 2013)(quoting Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co., 499 F. App'x 559, 564 (6th Cir. 2012)(citations omitted)). However, the court in Tate noted that "'[l]ike all canons of interpretation, the rule of the last antecedent can be overcome by textual indication of contrary meaning.'" Id. (quoting Decker v. Northwest Environmental Defense

Center, ___ U.S. _____, 133 S.Ct. 1326, 1343-44 (2013)). The Sixth Circuit has also noted that an interpretation which gives a reasonable, lawful, and effective meaning to all of a plan's terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or superfluous. Rodriquez v. Tennessee Laborers Health & Welfare Fund, 89 F. App'x 949, 954 (6th cir. 2004)(citing Restatement (Second) of Contracts §203(a)(1981)).

The title of the exclusion is "Aircraft Pilot or Crew." It is reasonable to construe the entire provision as one applying only to insureds who are acting or training as pilots or crew members. As the Review Committee noted, if the phrase "exiting any aircraft while acting or training as a pilot or crew member" is severed from the rest of the language of the exclusion, then the words "riding as a passenger in" and "entering" are left hanging with no explanation as to what the passenger is riding in or entering. In addition, if the exclusion is limited to pilots or crew members while they are exiting the aircraft, there would be no need for the exception to the exclusion for "a Primary Insured Person riding as a passenger in [or] entering ... the Policyholder's Owned Aircraft, Leased Aircraft or Operated Aircraft while such Primary Insured Person is acting or training as a pilot or crew member by or on behalf of the Policyholder[.]" AR 27. The phrase "acting or training as a pilot or crew member" is reasonably read as applying to insureds who are either "riding as a passenger in," "entering," or "exiting" any aircraft not owned, leased or operated by Battelle.

Plaintiffs also argue that the word "passenger" does not include "pilots" or "crew members." In some cases, insurance

10

policies specifically exclude pilots and crew members from the definition of "passenger." See Jordan v. National Acc. Ins. Underwriters Inc., 922 F.2d 732, 733 (11th Cir. 1991); Ideal Mut. Ins. Co. v. Myers, 789 F.2d 1196, 1197 n. 3 (5th Cir. 1986). However, the Policy in this case does not define "passenger," nor does it contain any language suggesting that a pilot or crew member could not be a "passenger." Similarly, the Policy's definition for "private Passenger Automobile" is "a four wheeled motor vehicle with a maximum capacity of nine (9) people," not "eight people plus a driver." See AR 41. There is no language in the Policy which would preclude broadly interpreting the word "passenger" as meaning any person, including a person acting as a pilot or crew member, who is traveling in, or, as the Policy states, "riding ... in" the aircraft.

This interpretation is further supported by the second exception to the "Aircraft Pilot or Crew" exclusion, "passengers who temporarily perform pilot or crew functions in a life threatening emergency." This exception indicates that the phrase "while acting or training as a pilot or crew member" is the key focus of and qualifier in the exclusion. The second exception indicates that persons who began the flight solely as passengers in an aircraft are not excluded from coverage even though they are pressed during the flight into "acting or training as a pilot or crew member" due to an emergency situation, such as the incapacitation of the pilot. If, as plaintiffs argue, the word "passenger" should be interpreted as one who is never "acting or training as a pilot or crew member," this exception would not be necessary.

11

The court concludes that there is a reasonable explanation for the administrator's decision denying benefits in light of the Policy's provisions. The decision was rational, and was neither arbitrary nor capricious. Even if the de novo standard of review applies in this case, the court agrees with defendants' interpretation of the Policy and concludes that their decision to deny benefits was correct. Defendants are entitled to judgment on the administrative record on this claim.

## IV. Breach of Fiduciary Duty Claim

## A. Defendants' Motion to Dismiss

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Claim Two, the breach of fiduciary duty claim, for failure to state a claim for relief. In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiffs, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id. A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.

12

<u>Twombly</u>, 550 U.S. 544, 570 (2007).

Plaintiffs allege in Claim Two that the defendants breached their fiduciary duties by denying plaintiffs' claim for benefits based on an incorrect interpretation of an exclusion in the Policy. Complaint, ¶32.  Plaintiffs further argue that defendants were unjustly enriched by improperly withholding accidental death benefits which were then available for use by defendants for investment, generating unfair profits for Federal.  Complaint, ¶ 35.  Plaintiffs claim that they are entitled to an accounting of defendants' investment, financial and profit statements. Defendants argue that plaintiffs' breach of fiduciary duty claim is nothing more than a restatement of the §1132(a)(1)(B) claim asserted in Count One, and therefore, relief is not available under §1132(a)(3).

In <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512 (1996), the Supreme Court noted that "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to interpretation of plan documents and the payment of claims" through a cause of action under §1132(a)(1)(B).  The remedy for "other breaches of other sorts of fiduciary obligation" may be sought under the "catchall" provision in §1132(a)(3).  <u>Id.</u>  The Supreme Court concluded that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would normally not be appropriate."  <u>Id.</u> at 515.

The Sixth Circuit in <u>Wilkins v. Baptist Healthcare Sys. Inc.</u>, 150 F.3d 609, 615 (6th Cir. 1998), interpreted <u>Varity Corp.</u> as limiting "the applicability of §1132(a)(3) to beneficiaries who may

not avail themselves of §1132's other remedies." See also Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 491 (6th Cir. 2009)(relief under §1132(a)(3) not appropriate where plaintiff merely "repackages" a §1132(a)(1)(B) benefits claim). Irrespective of the degree of success obtained on a claim for recovery of benefits, a claimant can pursue a breach of fiduciary duty claim only where that claim is based on an injury separate and distinct from the denial of benefits, or where the remedy afforded by Congress under §1132(a)(1)(B) is otherwise shown to be inadequate. Rochow v. Life Ins. Co. of North America, 780 F.3d 364, 372 (6th Cir. 2015). "Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury." Id. at 373 (because claimant had an adequate remedy for plan administrator's wrongful denial of benefits under §1132(a)(1)(B), he could not obtain additional relief for that same injury under §1132(a)(3)).

In Rochow, the Sixth Circuit rejected the plaintiff's argument that a claim for a disgorgement award or equitable accounting stated a claim for a separate injury. The court concluded that the administrator's withholding of profits obtained through the use of benefit funds which allegedly should have been paid to plaintiff was ancillary to and a continuing effect of the same denial of benefits, constituting a single injury. Id. at 374 (noting that plaintiff's loss was the same irrespective of the use of the withheld benefits made by the administrator). The court also concluded that plaintiff's claim for disgorgement of profits was "nothing but a repackaged claim for benefits wrongfully denied[.]"

14

<u>Id.</u> at 375.

Under circumstances not found in the present case, the Sixth Circuit has held that an action under §1132(a)(3) is available. In <u>Hill v. Blue Cross & Blue Shield of Mich.</u>, 409 F.3d 710, 718 (6th Cir. 2005), the Sixth Circuit recognized that there are some circumstances under which an ERISA plaintiff may simultaneously bring claims under both §1132(a)(1)(B) and §1132(a)(3). The court held that where an award of individual benefits pursuant to §1132(a)(1)(B) could not provide an adequate remedy for the alleged injury to the plaintiffs caused by the plan's alleged improper methodology for handling all emergency-medical-treatment claims for which plaintiffs sought injunctive relief, outright dismissal of the plaintiffs' §1132(a)(3) claims was in error. <u>Id.</u> In <u>Gore v. El Paso Energy Corp. Long Term Disability Plan</u>, 477 F.3d 833, 840-842 (6th Cir. 2007), the Sixth Circuit concluded that plaintiff had alleged two separate and distinct injuries: an erroneous interpretation of plan language by the claims administrator, resulting in a wrongful denial of long-term disability benefits subject to redress under §1132(a)(1)(b); and a breach of fiduciary duty by the employer, which had no involvement in claims administration, based on the employer's alleged misrepresentation concerning the duration of benefits, a claim that could only be addressed under §1132(a)(3). <u>See</u> <u>also</u> <u>Stiso v. International Steel Group</u>, 604 F. App'x 494, 498-501 (6th Cir. 2016)(recognizing a claim under §1132(a)(3) against employer for misleading plan summary).

The allegations in plaintiffs' complaint do no more than express disagreement with Federal's interpretation of the pilot's

exclusion provision.  As in Rochow, plaintiffs' claim for breach of fiduciary duty stemming from the denial of benefits, including plaintiffs' withholding of profits and unjust enrichment allegations, does not plead a claim for any injury separate and distinct from the denial of benefits.  Plaintiffs' complaint contains no allegations of a plan-wide policy or practice of violating ERISA which could be rectified only by injunctive relief, as in Hill, or of an employer's misrepresentations which could only be redressed through a §1132(a)(3) claim, as in Gore and Stiso. The court concludes that plaintiffs' breach of fiduciary duty claim is a claim for which relief may be sought as part of Claim One's request for benefits under §1132(a)(1)(B), and that defendants' motion to dismiss is well taken.

B. Plaintiffs' Motion for Summary Judgment

        In their motion for judgment on the administrative record, plaintiffs have also moved for summary judgment on Claim Two. Plaintiffs contend for the first time in their motion that defendants breached a fiduciary duty by making allegedly ambiguous statements in the 2008 Summary Plan Description.  Specifically, plaintiffs note the following language:

        The Plan does not cover any loss, fatal or non-fatal,
        caused by or resulting from:

                                * * *

        (4) war or any act of war, whether declared or
            undeclared, occurring within the United States,
            Canada, your country of permanent domicile,
            Afghanistan, Iraq, Saudi Arabia, and Indonesia,
            injuries sustained on a non-covered aircraft.

AR 340.  Plaintiffs argue that this language is misleading because it suggests that injuries in non-covered aircraft are excluded only

if they occur during a war or as the result of an act of war.  The administrative record contains no evidence that Donny Asher relied on the Summary Plan Description to his detriment in making any decisions concerning his participation in the Plan.  Asher's beneficiary designation of February 28, 2007, indicates that he became a Plan participant prior to the release of the 2008 Summary Plan Description.  See AR 171.

As noted above, plaintiffs' complaint contains no allegations of misrepresentations by defendants, either in general or specifically in the Summary Plan Description.  A party may not "expand its claims to assert new theories" in response to a motion for summary judgment.  Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007).  Likewise, a party may not assert new legal theories for the first time in a summary judgment motion.  Prunty v. Wilson, 19 F.3d 1434 (Table), 1994 WL 91844 at *1 (6th Cir. March 21, 1994)(new claims asserted by plaintiff for the first time in his motion for summary judgment were not properly presented before the district court).  Defendants' motion to dismiss Claim Two was filed on April 2, 2015, alerting plaintiffs to the deficiencies in this claim.  According to the magistrate judge's preliminary pretrial order (Doc. 13), a motion for leave to amend the complaint was due by May 5, 2015, yet no such motion was filed.  Plaintiffs may not convert their breach of fiduciary duty claim into a misrepresentation claim by asserting it for the first time in a motion for summary judgment.  Plaintiffs' motion for summary judgment on Claim Two is denied, and defendants' motion to dismiss that claim is granted.

17

V. Conclusion

In accordance with the foregoing, defendants' motion to dismiss Claim Two (Doc. 7) is granted. The Asher plaintiffs' motion for judgment on the administrative record and for summary judgment (Doc. 16) is denied. Defendants' motion for judgment on the administrative record (Doc. 17) is granted. Judreta Beardsley's motions for judgment on the administrative record and for summary judgment (Docs. 23 and 26) are denied. The clerk shall enter judgment in favor of the defendants.

Date: September 30, 2016          <u>          s/James L. Graham          </u>
                                  James L. Graham
                                  United States District Judge

18